**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| ANDRE FRED GOODMAN, | : | CIVIL ACTION |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| SUPERINTENDENT COLEMAN, *et al.*, | : | |
| Respondent | : | NO. 08-3136 |


## REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS                                    January 22, 2010
UNITED STATES MAGISTRATE JUDGE

Presently before the court is a Petition for Writ of Habeas Corpus filed by Andre Fred Goodman ("Petitioner"), *pro se*, pursuant to 28 U.S.C. § 2254. Petitioner is a state prisoner serving a 25 to 40 year term of incarceration at the State Correctional Institution-Fayette in LaBelle, Pennsylvania. He seeks habeas relief based on claims of insufficient evidence, trial court error, prosecutorial misconduct and ineffective assistance of counsel. The Honorable J. Curtis Joyner referred this matter to the undersigned for preparation of a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that all of Petitioner's habeas claims be either DISMISSED or DENIED without an evidentiary hearing.

## I. FACTUAL AND PROCEDURAL HISTORY[1]

On November 5, 2003, following a jury trial, Petitioner was convicted on attempted homicide, aggravated assault, related criminal conspiracy, and recklessly endangering another person charges. *Commonwealth v. Goodman*, No. 1064-2003, slip op. at 1 (Lancaster Co. Ct. Comm. Pl.

---

[1] The facts set forth in this background and procedural history were gleaned from Petitioner's Habeas Corpus Petition, the Commonwealth's Answer, inclusive of all exhibits thereto, and the state court record.

Dec. 2, 2004) ("Trial Ct. Op."). On direct appeal, the Pennsylvania Superior Court summarized the facts leading to Petitioner's conviction as follows:

> On January 3, 2003, [Petitioner] and his co-defendant, Amir Pratt ("Pratt"), were riding in a burgundy-colored car in the vicinity of the victim, Kirk Davis. (Notes of Testimony ("N.T.") dated November 4, 2003, at 65-66). Pratt was the driver and [Petitioner] was riding in the front passenger seat. [Petitioner] spotted the victim, with whom he was already acquainted, and exchanged greetings with him. (N.T. at 66). Shortly thereafter, [Petitioner] got out of the car and shot the victim in the chest at point blank range. After the shooting, [Petitioner] ran back to Pratt's car which was parked approximately thirty (30) yards away. (N.T. 70-71). [Petitioner] later told his cousin that Pratt had a gun and that the victim had been shot. (N.T. at 193).

*Commonwealth v. Goodman*, No. 266 MDA 2004, slip op. at 2 (Pa. Super. Ct. Feb. 11, 2005) ("2005 Super. Ct. Op."). On January 23, 2004, the trial court sentenced Petitioner to fifteen to thirty years of imprisonment for attempted homicide and a consecutive term of ten years for criminal conspiracy. *Id.* at 3.

Petitioner filed a timely direct appeal, however, based upon his Statement of Matters Complained of on Appeal, the trial court found no reversible error. Trial Ct. Op. at 2-10. On February 11, 2005, the Superior Court affirmed on the basis of the trial court's opinion. 2005 Super. Ct. Op. at 5-6. The Pennsylvania Supreme Court denied allowance of appeal ("*allocatur*") on June 27, 2005. *Commonwealth v. Goodman*, No. 153 MAL 2005, Order (Pa. June 27, 2005). Petitioner did not seek *certiorari* in the United States Supreme Court. Answer at 4.

On August 10, 2005, Petitioner, filing *pro se,* sought relief under the Post Conviction Relief Act, ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541-46. Answer at 4. Court-appointed counsel amended the PCRA petition on December 15, 2005. *Id.* An evidentiary hearing was held on April

26, 2006.  *Id.*  On February 13, 2007, the trial court denied PCRA relief.  *Commonwealth v. Goodman*, No. 1602-2003, slip op. at 2-5 (Lancaster Co. Ct. Comm. Pl. Feb. 13, 2007) ("PCRA Ct. Op.").  On December 5, 2007, the Superior Court affirmed on the basis of the trial court's opinion.  *Commonwealth v. Goodman*, No. 380 MDA 2007, slip op. at 2-3 (Pa. Super. Ct. Dec. 5, 2007) ("2007 Super. Ct. Op.").  The Pennsylvania Supreme Court denied *allocatur* on May 28, 2008.  *Commonwealth v. Goodman*, 951 A.2d 1161 (2008) (Table).  Petitioner did not seek *certiorari* in the United States Supreme Court.  Answer at 6.

The instant habeas petition, filed on July 2, 2008, raises six grounds for relief: (1) the evidence was insufficient to support Petitioner's conspiracy conviction; (2) the trial court erred by admitting hearsay evidence from a police officer witness; (3) the trial court erred by allowing a police officer to testify about a hearsay statement the victim made three hours after the shooting; (4) the prosecutor failed to provide to Petitioner exculpatory evidence in a timely fashion; (5) the prosecutor committed misconduct during closing argument by referring to Osama Bin Laden and the September 11, 2001 terrorist attack; (6) trial counsel rendered ineffective assistance by failing to cross-examine prosecution witness Latoya Thomas about her prior statement that she had seen Petitioner's co-defendant, Amir Pratt, armed with a handgun on the night of the shooting.  Pet. at 9-A through 9-C.  The Commonwealth argues that Grounds Two and Three are not cognizable and that the remaining grounds lack merit under the applicable standard of review.  The court agrees.[2]

---

[2]The Commonwealth does not address the question of exhaustion.  *See* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of state court remedies).  Nonetheless, the court has reviewed the state court record and finds that, of Petitioner's cognizable claims, Grounds One, Four and Five were raised in the trial court and the Pennsylvania Superior Court on direct appeal and Ground Six was raised to the trial court and the Superior Court during PCRA appeal.  Hence, these claims are exhausted.  *See Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004) (holding that, in Pennsylvania, claims presented to the trial court and the Superior Court are exhausted).  Exhaustion is irrelevant regarding Grounds Two and Three, which are not cognizable.  *See infra* Section II.A.

## II. DISCUSSION

**A.      Non-Cognizable Claims - Trial Court's Admission of Hearsay - Grounds Two and Three**

Habeas relief is only available based upon violations of the Constitution, laws or treaties of the United States.  28 U.S.C. § 2254(a).  For this reason, claims based upon state law are not cognizable.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Inasmuch as Grounds Two and Three challenge the admission of evidence under state evidentiary law, they are not cognizable.  *Id.* at 72.

**B.      Cognizable Claims - Grounds One, Four, Five and Six**

**1.      The AEDPA Standard of Review**

Any claims adjudicated by the state court must be considered under the standard of review established by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that this court cannot grant habeas relief on a claim unless the state court's adjudication of it:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  The habeas statute also provides that any findings of fact made by the state court must be presumed to be correct; Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

A state court's adjudication of a claim is contrary to United States Supreme Court precedent if the state court has applied a rule that contradicts the governing law set forth in Supreme Court precedent or if the state court confronts a set of facts which are materially indistinguishable from a decision of the Supreme Court and the state court arrives at a different result from the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). In determining whether a state court's decision was contrary to Supreme Court precedent, the habeas court should not be quick to attribute error. *See Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*). Instead, state court decisions should be "given the benefit of the doubt." *Id.* In this regard, it is not necessary that the state court cite the governing Supreme Court precedent or even be aware of the governing Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*). All that is required is that "neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent. *Id.*

If, however, the state court correctly identifies the governing United States Supreme Court precedent, unreasonable application analysis, rather than contrary analysis, is appropriate. *Williams v. Taylor*, 529 U.S. at 406. A state court decision constitutes an unreasonable application of Supreme Court precedent if the state court correctly identifies the governing legal rule but applies it unreasonably to the facts of the petitioner's case. *Id.* at 407-08. In making the unreasonable application determination, the habeas court must ask whether the state court's application of Supreme Court precedent was objectively unreasonable. *Id.* at 409. The habeas court may not grant relief simply because it believes the state court's adjudication of the petitioner's claim was incorrect. *Id.* at 411. Instead, the habeas court must be convinced that the state court's adjudication of the claim was objectively unreasonable. *Id.* When deciding whether a state court's application of Supreme Court precedent was unreasonable, it is permissible to consider the decisions of lower

federal courts which have applied clearly established Supreme Court precedent. *See Marshall v. Fredericks*, 307 F.3d 36, 71 n.24 (3d Cir. 2002); *Moore v. Morton*, 255 F.3d 95, 104 n.8 (3d Cir. 2001).

The Supreme Court, addressing the AEDPA's factual review provisions in *Miller-El v. Cockerell*, 537 U.S. 322 (2003), interpreted § 2254(d)(2) to mean that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Id.* at 340. Yet, the habeas court can "disagree with a state court's credibility determination." *Id.*; *see also Wiggins v. Smith*, 539 U.S. 510, 528 (2003) (rejecting state court's factual determination under § 2254(e)(1) and § 2254(d)(2)). If the state court's decision based on a factual determination is unreasonable in light of the evidence presented in the state court proceeding, habeas relief is warranted under § 2254(d)(2).[3] *Lambert v. Blackwell,* 387 F.3d 210, 235 (3d Cir. 2004).

## 2. The Evidence of Criminal Conspiracy was Sufficient - Ground One

Petitioner's challenge to the sufficiency of the evidence to sustain his conspiracy conviction is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979). Under *Jackson*:

> The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt'. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

---

[3] Within the overarching standard of § 2254(d)(2), a petitioner may attack specific factual determinations made by the state court that are subsidiary to the ultimate decision. *Lambert*, 387 F.3d at 235. Here, § 2254(e)(1) instructs that the state court's factual determination must be afforded a presumption of correctness that the petitioner can rebut only by clear and convincing evidence. *Id.* A petitioner may develop clear and convincing evidence by way of a hearing in federal court if he satisfies the prerequisites set forth in 28 U.S.C. § 2254(e)(2). *Lambert*, 387 F.3d at 235. In the final analysis, even if a state court's individual factual determinations are overturned, the remaining findings must still be weighed under § 2254(d)(2). *Lambert*, 387 F.3d at 235-36.

> elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review, *all of the evidence* is to be considered in the light most favorable to the prosecution.

*Jackson*, 443 U.S. at 318-319 (citations omitted) (emphasis as in original). In addition, where historical facts support conflicting inferences, the habeas court engaging in sufficiency of the evidence review must presume that the trier of fact resolved any such conflicts in favor of the prosecution. *Id.* at 326. Finally, when applying the sufficiency of the evidence test, the habeas court must consider the types of evidence the state courts consider relevant to proving the elements of the offense at issue.[4] *Id.* at 324. This review is essential inasmuch as the elements of the criminal offense are defined by state law. *See id.* at 324 n.16.

In Pennsylvania, a criminal conspiracy occurs when, with the intent of promoting or facilitating a crime: (1) the defendant agrees with another person or persons that one or more of them will engage in the conduct which constitutes the crime or an attempt or solicitation to commit the crime; or (2) agrees to aid the other person or persons in the planning or commission of the crime or an attempt or solicitation to commit the crime. *See* 18 Pa. Cons. Stat Ann. § 903(a). Pennsylvania law also requires that the defendant or a person with whom he conspired commit an overt act in furtherance of the conspiracy. *See* 18 Pa. Cons. Stat. Ann. § 903(e). Pennsylvania law acknowledges the difficulty in proving an explicit formal agreement to commit an unlawful act, hence, the agreement may be inferred from the relevant circumstances. *Commonwealth v. Spotz*, 756

---

[4]The Third Circuit noted that, when applying the sufficiency of the evidence test, the habeas court should "look to the evidence the state considers adequate to meet the elements of a crime governed by state law." *Jackson v. Byrd*, 105 F.3d 145, 149 (3d Cir. 1997).

A.2d 1139, 1162 (Pa. 2000). Petitioner specifically maintains that the prosecution failed to present any direct evidence under 18 Pa. Cons. Stat. Ann. § 903(a) that he agreed with co-defendant Amir Pratt to commit aggravated assault against Kirk Davis, the victim. Pet. at 9-A.

The trial court adjudicated Petitioner's claim as follows:

> In the present case, the evidence adduced at trial was sufficient to sustain the conviction for criminal conspiracy. For instance, the evidence showed that the co-conspirator and the victim had a previous altercation and that [Petitioner] and the co-conspirator were associated with one another, both during the previous altercation and at the time of the shooting. In addition, [Petitioner] was with the co-conspirator on the night of the shooting and was a passenger in the co-conspirator's car that passed the victim. After shooting the victim, moreover, [Petitioner] ran towards the car driven by the co-conspirator. There was also evidence that the co-conspirator provided [Petitioner] with the gun that was used during the shooting. Viewed together, this evidence is sufficient to support the conviction for criminal conspiracy.

Trial Ct. Op. at 3-4.

The trial court did not cite *Jackson* for its sufficiency test, but instead relied upon Pennsylvania authority for the applicable standard.[5] Trial Ct. Op. at 2 (citing *Commonwealth v. Burton*, 301 A.2d 599, 600) (Pa. 1973)). Nonetheless, the Third Circuit has opined that the Pennsylvania standard for sufficiency is identical to the federal *Jackson* standard. *See Evans v. Ct. of Comm. Pleas, Dela. Co., Pa.*, 959 F.2d 1227, 1233 (3d Cir. 1992). Since the trial court applied law that is consistent with *Jackson*, its adjudication of Petitioner's claim was not contrary to

---

[5]The trial court applied the following Pennsylvania sufficiency test:

> the test in determining if the evidence is sufficient to sustain a criminal a conviction is, whether accepting as true all of the evidence of the Commonwealth, and all reasonable inferences therefrom, upon which a jury could have properly reached its verdict, was it sufficient in law to prove beyond a reasonable doubt that the appellant was guilty of the crime of which he stands convicted.

Trial Ct. Op. at 2 (quoting *Commonwealth v. Burton*, 301 A.2d 599, 600 (Pa. 1973))

Supreme Court precedent. *See Williams v. Taylor*, 529 U.S. 405-06 (a state court decision is contrary to Supreme Court precedent when it applies a rule that contradicts the governing law set forth in Supreme Court precedent).

The trial court found that the evidence was sufficient because it supported the inference that Petitioner and his co-defendant agreed to assault the victim. Trial Ct. Op. at 3-4. In light of the evidence the trial court summarized, it was certainly reasonable to infer that Petitioner and his co-defendant conspired to assault the victim and that, consistent with this agreement, Petitioner shot the victim with a gun provided to him by his co-defendant.[6] Hence, the trial court's adjudication of Petitioner's claim was a reasonable application of Supreme Court precedent in light of the evidence presented.

### 3. Petitioner's *Brady* Claim Lacks Merit - Ground Four

Petitioner challenges the prosecution's failure to promptly provide him a report showing there was no gun powder residue on the victim's clothes. Notably, although the report could have been produced well before the start of trial, the prosecution first presented it on the day trial commenced. Pet. at 9-B. Petitioner maintains that this evidence undercuts the prosecution's case because – inconsistent with the victim's testimony – the reports suggests that the victim was not shot at close range. *Id.* This claim rests on *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.

Under the *Brady* line of cases, the prosecution has the duty to disclose to the defendant any favorable evidence that is material to guilt or punishment. *See Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995). The prosecutor is required to learn of and disclose any favorable evidence which persons acting on his or her behalf, such as the police, have acquired. *See id.* at 437. In evaluating the

---

[6] Indeed, the evidence of conspiracy to commit aggravated assault was so strong that, during closing argument, Petitioner's attorney conceded that there was sufficient evidence to convict Petitioner of this crime. (N.T. 11/5/03 at 267).

prosecutor's failure to disclose favorable evidence, the prosecutor's good faith or bad faith is irrelevant. *See id.* at 437-38. Evidence is deemed material when there is a reasonable probability that, if the evidence had been disclosed to the defendant, the result of the proceeding would have been different. *Id.* at 433-34. In order for omitted evidence to be material, it is not necessary that the evidence establish by a preponderance that disclosure of the evidence would have resulted in an acquittal. *Id.* at 438.

The trial court noted that, in order for Petitioner to prevail on his *Brady* claim, he needed to demonstrate that:

> (1) the evidence was suppressed by the state, either wilfully or inadvertently; (2) the evidence at issue is favorable to the Defendant; and (3) the evidence was material, meaning that prejudice must have ensued.

Trial Ct. Op. at 8 (quoting *Commonwealth v. Chambers*, 807 A.2d 872, 887 (Pa. 2002)). *Chambers* relied upon *Stickler v. Greene*, 527 U.S. 263, 281-82 (1999),[7] a case in the *Brady* line, for the standard it applied. *See Chambers*, 807 A.2d at 887. Hence, the trial court applied the proper test and its resultant decision is not contrary to Supreme Court precedent. *See Williams v. Taylor*, 529 U.S. 405-06 (explaining that a state court decision is contrary to Supreme Court precedent when it applies a rule that contradicts the governing law set forth in Supreme Court precedent).

The trial court concluded that Petitioner's *Brady* claim lacked merit because, although the prosecution was tardy in providing the report, Petitioner did receive it on the first day of trial and,

---

[7]In *Stickler*, the Supreme Court essentially articulated the *Brady* standard:

> There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either wilfully or inadvertently; and prejudice must have ensued.

*Stickler*, 527 U.S. at 281-82.

thus, was able to use it both during cross-examination to impeach the victim and in closing argument to challenge the prosecution's theory of the case. Trial Ct. Op. at 8. This application of *Brady* is consistent with Third Circuit precedent as articulated in *United States v. Kaplan*, 554 F.2d 577, 580 (3d Cir. 1977) and *Gov't. of the Virgin Islands v. Ruiz*, 495 F.2d 1175, 1178-79 (3d Cir. 1974); both cases, held that the prosecution's tardy production of exculpatory evidence did not constitute a *Brady* violation, since the defendant was able to use the evidence at trial. Accordingly, the state court's application of *Brady* in this case was reasonable and Petitioner cannot be afforded relief under 28 U.S.C. § 2254(d)(1).[8] *See Marshall v. Fredericks*, 307 F.3d 36, 71 n.24 (3d Cir. 2002) (noting that the opinions of the lower federal courts are relevant to determining whether a state court's application of Supreme Court precedent is reasonable); *Moore v. Morton*, 255 F.3d 95, 104 n.8 (3d Cir. 2001) (same).

### 4. Petitioner's Prosecutorial Misconduct Claim Lacks Merit - Ground Five

Petitioner maintains that prosecutorial misconduct occurred when the assistant district attorney referenced Osama Bin Laden and the terrorist attack of September 11, 2001 during his closing argument. Pet. at 9-B. He asserts that this unwarranted remark was designed to inflame the passion of the jury to convict Petitioner. *Id.*

A prosecutor's improper remarks may constitute a due process violation if they infect the trial with unfairness. *See Greer v. Miller*, 483 U.S. 756, 765 (1987) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (same). It is not enough that the remarks be undesirable, or even "universally condemned;" the focus must be on the fairness of the trial, so, the remarks must be reviewed in context of the whole trial. *Darden*, 477

---

[8]Petitioner provides no basis to conclude that, in light of the evidence before it, the state court's adjudication of his *Brady* claim was based upon an unreasonable factual determination. Hence, he cannot be afforded relief under 28 U.S.C. § 2254(d)(2).

U.S. at 181. In making this due process inquiry, whether the remarks were made in response to a defense argument, *Darden*, 477 U.S. at 182, and the strength of the prosecution's case are relevant considerations. *Greer*, 483 U.S. at 766-67.

The trial court did not cite *Greer*, *Darden* or *Donnelly*; yet, it applied a test very similar to the one found in those cases – it noted that the prosecutor's remarks had to be viewed in context, whether they were made in response to defense argument had to be considered, and whether the remarks deprived the defendant of a fair trial was the crucial inquiry. Trial Ct. Op. at 9. This test is very similar to the due process test the United States Supreme Court has applied, hence, the trial court's decision was not contrary to United States Supreme Court precedent. *See Williams v. Taylor*, 529 U.S. 405-06 (explaining that a state court decision is contrary to Supreme Court precedent when it applies a rule that contradicts the governing law set forth in Supreme Court precedent).

The trial court concluded that the prosecutor's remarks,[9] although not to be condoned, did not deprive Petitioner of a fair trial. Trial Ct. Op. at 9. The court expressly noted that the prosecutor's remarks were responsive to Petitioner's statement during closing that his one shot did

---

[9]In his closing, the prosecutor stated:

> As attorneys, we try to predict what may or may not happen in a courtroom and figure out, you know, what our response is gonna be. And I saw it forthcoming that, you know, one shot to the chest, the argument is gonna be that's not specific intent to kill.
> And the thought that keeps crossing my mind is, back when the terrorists drove an airplane into the Twin Towers, one airplane in each tower, and the towers collapsed and people died, I thought, can you imagine if, like, Al-Quaida, Osama, was arguing, I didn't mean to kill those people in the twin towers. I just wanted to destroy the towers and cause property damage and warn the President to change his policies in the middle east. I didn't mean to kill them.
> Come on, ladies and gentlemen of the jury. It doesn't take two bullets to try to kill somebody. It doesn't take two planes to try to knock down the towers. One bullet placed in the chest point blank, near the aorta, near the heart, near the chest, speaks for itself.

(N.T. 11/5/03 at 301-02).

not constitute a specific intent to kill.[10]  *Id.*  The trial court's reasoning was not an unreasonable

application of Supreme Court precedent.  First, the prosecutor's remarks were an attempt, albeit an

imprecise one, to rebut Petitioner's assertion in his closing argument that one shot alone did prove

he harbored a specific intent to kill.  Further, the evidence of Petitioner's guilt was strong; the victim,

who had known Petitioner for three years prior to the shooting, (N.T. 11/4/03 at 62-63), clearly

identified Petitioner as his assailant.  (N.T. 11/4/2003 at 63, 70).  Moreover, although the

prosecutor's remarks were improper, they were only uttered once.  The Supreme Court has failed to

find a due process violation even where the prosecutor made repeated and more egregious, improper

remarks.  *See Darden*, 477 U.S. at 179-180 & n. 11-12 (noting that the prosecutor referred to the

defendant as an animal, who should only be let out of his cell on a leash, expressed his wish to see

the defendant dead with his face blown away by a shotgun, and expressed his wish that the defendant

had killed himself).[11]

### 5.    Trial Counsel Did Not Render Ineffective Assistance - Ground Six

Petitioner argues that trial counsel rendered ineffective assistance by failing to cross-examine

prosecution witness Latoya Thomas about her statement that she had seen Petitioner's co-defendant,

Amir Pratt, on the night of the crime armed with a handgun.  Pet. at 9-C.

Claims of ineffective assistance of counsel must be evaluated against the two-part test

---

[10]In his closing, Petitioner's counsel stated:

> Now, the gun jamming is very important, because there's no specific intent
> to kill in this case, because one shot, you're thinking it's a warning shot.
> Now, if somebody's standing up against you and they empty the clip in
> you, or the revolver or whatever, then it's clear that you intended to kill them.  And
> in this case, there's none of that.

(N.T. 11/5/03 at 275).

[11]Petitioner provides no basis to conclude that, in light of the evidence before it, the state court's adjudication
of his prosecutorial misconduct claim was based upon an unreasonable factual determination.  Hence, he cannot be
afforded relief under 28 U.S.C. § 2254(d)(2).

announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  In making this determination, the court's scrutiny of counsel's performance must be "highly deferential." *Id.* at 689.  The court should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*  In short, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*

Second, the petitioner must show that counsel's deficient performance "prejudiced the defense" by "depriv[ing] the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687.  That is, the petitioner must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.* at 694, but it is less than a preponderance of the evidence. *Id.* at 693, 694.

If the petitioner fails to satisfy either prong of the *Strickland* test, there is no need to evaluate the other part, as his claim will fail. *Id.* at 697.  Further, counsel will not be deemed ineffective for failing to present an unmeritorious claim or objection. *Parrish v. Fulcomer*, 150 F.3d 326, 328-29 (3d Cir. 1998); *Moore v. Deputy Commrs. of SCI-Huntingdon*, 946 F.2d 236, 245 (3d Cir. 1991).

The PCRA court held an evidentiary hearing concerning Petitioner's ineffective assistance claim on April 26, 2006.  Thereafter, applying the three part-test for ineffective assistance that

Pennsylvania courts employ,[12] the trial court found the claim lacked merit. PCRA Ct. Op. at 2-3. The Third Circuit has determined that Pennsylvania's three part test is consistent with *Strickland*. *Jacobs v. Horn*, 395 F.3d 92, 106 n.9 (3d Cir. 2005); *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000). Hence, the state court's decision was not contrary to United States Supreme Court precedent. *Werts*, 228 F.3d at 204.

The PCRA court found that Petitioner's ineffective assistance claim lacked merit because trial counsel gave a reasonable explanation for failing to question Ms. Thomas about the gun. PCRA Ct. Op. at 3-4. Trial counsel explained that he was satisfied with Ms. Thomas's testimony on direct examination that Amir Pratt had a gun on the night of the shooting; counsel was concerned that, if he further pressed Ms. Thomas during cross-examination, she might say something contradictory, especially since she had already given the police numerous, conflicting statements. (N.T. 4/26/06 at 8-9). Trial counsel further shared that, in his experience, once useful evidence is obtained from a witness, further questioning on the matter may diminish its evidentiary value. *Id.* at 12. He was particularly concerned about this with Ms. Thomas who had a history of providing prior inconsistent statements. *Id.* In light of the deference owed counsel's strategic decisions and the presumption that his strategic decisions were reasonable, *see Strickland*, 466 U.S. at 689, this court concludes that the PCRA court's adjudication of this claim was reasonable.[13]

### III.    CONCLUSION

Grounds Two and Three are non-cognizable and must be dismissed. The remaining claims,

---

[12] In Pennsylvania courts a successful ineffective assistance claim must show that: (1) the claim counsel omitted has arguable merit; (2) counsel lacked a reasonable basis to omit the claim; and (3) the defendant was prejudiced as a result. PCRA Ct. Op. at 2 (citing *Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001)).

[13] Petitioner provides no basis to conclude that, in light of the evidence before it, the state court's adjudication of his ineffective assistance claim was based upon an unreasonable factual determination. Hence, he cannot be afforded relief under 28 U.S.C. § 2254(d)(2).

Ground One, Four, Five and Six lack merit. Reasonable jurists would not debate the appropriateness of this court's procedural and substantive dispositions of his claims; therefore, a certificate of appealability should not issue. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, I make the following:

**<u>RECOMMENDATION</u>**

AND NOW, this 22[ns] day of January, 2010, for the reasons contained in the preceding report, it is hereby RECOMMENDED that all of Petitioner's claims be DISMISSED or DENIED, without an evidentiary hearing. Petitioner has neither demonstrated that any reasonable jurist could find this court's procedural ruling debatable, nor shown denial of any Constitutional right; hence, there is no probable cause to issue a certificate of appealability.

Petitioner may file objections to this Report and Recommendation within ten (10) days of being served with a copy of it. *See* Local R. Civ. P. 72.1(IV). Failure to file timely objections may constitute a waiver of any appellate rights.

It be so **ORDERED**.

   */s/ Carol Sandra Moore Wells*
CAROL SANDRA MOORE WELLS
United States Magistrate Judge